# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ALDON ALLEN,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,<br><br>    Defendants. | Case No. 1:23-cv-00213-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF THE ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>(ECF No. 10) |

Plaintiff John Aldon Allen is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's first amended complaint, filed March 28, 2023. (ECF No. 10.)

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## SUMMARY OF ALLEGATIONS

The Court accepts Plaintiff's allegations in his complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

From June 29, 2022 to December 29, 2022, North Kern State Prison (NKSP) housed Plaintiff in Facility C Buildings East and C with COVID-19 infected inmates and potentially infected inmates who refused to comply with the testing protocols. The first outbreak occurred on June 29, 2022, when an inmate in Facility C East tested positive for COVID. On July 1, 2022, the building was placed on quarantine with 80 to 200 inmates housed in the building testing positive for COVID and removed from the building and placed in isolation. Plaintiff remained in the building under quarantine and was tested for the virus on July 1, July 3, and July 5, 2022. On July 5, 2022, Plaintiff was tested twice at NKSP prior to leaving for court and when he arrived

at Marin County Jail, he tested positive for COVID-19. Plaintiff was placed in isolation for 14 days which delayed his court appearance.

During this outbreak, Warden Santoro approved and signed off on the daily program status report concerning inmate population which consists of housing placement. The program status report also incorporates the COVID-19 screening and testing matrix reviewed and approved by Chief Medical Officer Dr. Shittu. With respect to movement, Plaintiff should have remained in C-East on July 5, 2022, or placed in isolation and not transferred out of NKSP. On August 22, 2022, Plaintiff notified Warden Santoro, Associate Warden Hixon, Dr. Shittu, and RN C. Williams of this incident and the excessive risk to his health and safety which was compromised due to the unsanitary conditions in the dormitory setting and disregard to his medical care and safety. In later events, it is evident that the Defendants failed to take reasonable measures to abate the substantial risk of harm to these conditions posed to inmates.

On August 20, 2022, sergeant Chavez brought an inmate who was symptomatic with COVID to Plaintiff's assigned housing unit. Prior to entering the building, the symptomatic inmate raised concerns of his present state of health and felt he should be in isolation. Plaintiff also addressed sergeant Chavez regarding his concern for his health and welfare. Chavez responded that the housing assigned was approved by Dr. Shittu and Warden Santoro and if he continued to raise concern Plaintiff would be given a Rules Violation Report.

On December 19, 2022, Chavez housed an inmate who was symptomatic with COVID in Facility C building 3, where Plaintiff was housed. Plaintiff told Chavez of the risks associated with the current housing assignment and he was remiss. In both instances, the inmates who were symptomatic tested positive for COVID-19, causing the building to be placed on quarantine, spread of the virus among the inmate population, delay in rehabilitation, and a material adverse effect on Plaintiff's health and welfare.

Plaintiff notified Warden Santoro, Associate Warden Hixon, Dr. Shittu, and RN Williams on August 27, 2022, of the incident on August 20, 2022, and the serious risk of outbreak by housing infected inmates in a dormitory setting. After no action was taken, Plaintiff notified Defendants on September 1, September 15, and September 19, 2022, of the need to protect his

health and welfare by taking action to control the spread of the virus and risk of being housed with infected and potentially infected inmates.

On September 25, 2022, Plaintiff alerted Warden Santoro, Associate Warden Hixon, Dr. Shittu, and RN Williams of the requirements under California Code of Regulations, Title 15, sections 3383 and 3384, which requires them to visit the living areas weekly and to constantly review and evaluate the institution. Defendants failed to take reasonable measures to abate the situation, such as removing potentially infected inmates and not allowing infected or symptomatic inmates in the housing unit where Plaintiff was housed.

Warden Santoro continued to approve and sign the daily program status report regarding inmate population movement and housing assignment, providing direction to staff, with no effort to address the risk or take reasonable measures that NKSP was doing all it could during the pandemic. The Associate Warden failed to respond to issues of housing assignment and overcrowding, causing unsanitary conditions to reduce the spread of infection. Dr. Shittu failed to address the risks through COVID-19 screening and testing matrix for inmate intra-facility movement and institution to institution movement, where housing assignment is essential to prevent the spread of infection. RN C. Williams, who Plaintiff met with several times in September and October 2022, failed to address unsanitary conditions, overcrowding, and inadequate medical care of COVID testing protocols. Sergeant Chavez acted with deliberate indifference in placing infected inmates in Plaintiff's housing unit.

Plaintiff has suffered mental, emotional, and physical stress, anxiety, depression, and post-traumatic stress disorder, causing delay in his rehabilitation.

## III.
## DISCUSSION

### A.  Supervisory Liability

Insofar as Plaintiff is attempting to sue Defendants Warden Santoro and Associate Warden Hixon, or any other Defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cty.,

Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Corales, 567 F.3d at 570.

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970). To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." Waggy v. Spokane Cty. Wash., 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff has failed to allege direct participation in the alleged violations. Plaintiff talks about failings in the housing, overcrowding in dorms, prison movement/transfers, and possibly other deficiencies. Plaintiff has failed to allege the causal link between each Defendant and the claimed constitutional violation which must be specifically alleged. Nor does Plaintiff make a sufficient showing of any personal participation, direction, or knowledge on these Defendants' part regarding any other prison officials' actions.  Rather, Plaintiff simply states that Warden

Santoro continued to approve and sign the daily program status report regarding inmate population movement and housing assignment, providing direction to staff, with no effort to address the risk or take reasonable measures that NKSP was doing all it could during the pandemic. In addition, the Associate Warden failed to respond to issues of housing assignment and overcrowding, causing unsanitary conditions to reduce the spread of infection. These conclusory allegations do not demonstrate that Defendants Santoro and Hixon personally participated in the alleged deprivations or knew of any other individual's misconduct. Accordingly, Plaintiff fails to state a cognizable claim against Defendants Santoro and Hixon.

**B.    Deliberate Indifference to Safety**

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994). "First, the deprivation must be, objectively, sufficiently serious." Id. (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." Id. (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. Id. at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2006). Mere

negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer, 511 U.S. at 835; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731. Second, the prison official must "know[ ]of and disregard[ ] an excessive risk to inmate health or safety...." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

It is clear that COVID-19 poses a substantial risk of serious harm. See Plata v. Newsom, 445 F.Supp.3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.). However, in order to state a cognizable Eighth Amendment claim against the warden, and the other defendants named, Plaintiff must provide more than generalized allegations that the warden and other defendants have not done enough regarding overcrowding or prison movement or housing assignment to control the spread. See Booth v. Newsom, No. 2:20-cv-1562 AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); Blackwell v. Covello, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control the spread of COVID-19 in the prison); Benitez v. Sierra Conservation Ctr., Warden, No. 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021), report and recommendation adopted, 2021 WL 4593841 (E.D. Cal. Oct. 6, 2021) (Failed to state a claim on allegations that overcrowding/lack of distance between inmates has exacerbated the conditions leading to transmission of COVID. Plaintiff alleges that there is no way to socially distance,

among other conditions.); Sanford v. Eaton, No. 1:20-CV-00792 BAM (PC), 2021 WL 3021447, at *7 (E.D. Cal. July 16, 2021), report and recommendation adopted in part, rejected in part, No. 1:20-CV-00792 NONE BAM(PC), 2022 WL 168530 (E.D. Cal. Jan. 19, 2022 (in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and any other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread.)

The pertinent question in determining whether Plaintiff states a claim is whether Defendants' actions demonstrated deliberate indifference to that risk of harm. The key inquiry is not whether Defendants perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they "responded reasonably to the risk." See Stevens v. Carr, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis. Jan. 5, 2021); accord Benitez v. Sierra Conservation Center, 1:21-CV-00370 BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) (same); Sanford v. Eaton, 2021 WL 3021447, at *8 (same).

Here, Plaintiff contends that NKSP placed inmates infected with COVID-19 and potentially infected inmates in Facility C, Building 3. First, Plaintiff fails to link any prison official responsible for his housing placement. Second, Plaintiff does not explicitly plead that any Defendant knew that placing infected or potentially infected inmates in the same Facility and Building would pose a serious risk of infection to non-infected inmates housed there and nonetheless proceeded in the face of this risk. Third, the mere fact that Plaintiff contracted COVID-19 does not give rise to a claim for deliberate indifference to this safety. Fourth, Plaintiff fails to allege facts sufficient to show that each named Defendant was subjectively aware that *Plaintiff*, rather than the inmate population at large, was facing an objectively serious and excessive risk to his health and safety and that each Defendant failed to take reasonable steps to abate that risk. While the actions of Defendant may not have been effective or a "perfect response," Plaintiff does not adequately allege that Defendants were deliberately indifferent to

the spread of the disease. The efforts undertaken demonstrate that Defendants engaged in active conduct to manage the spread of the virus. Even if the response at NKSP has been inadequate, it has not disregarded a known risk or failed to take any steps to address the risk. Wilson v. Williams, 961 F.3d 829, 843 (6th Cir. 2020); Sanford v. Eaton, 2021 WL 3021447, at *8 (failure to state a claim where defendants were trying "alternatives" to manage the situation.)  Plaintiff's conclusory allegations that Defendants "knew or should of known" of the flawed process is insufficient.

Although Plaintiff contends that he should not have been transferred from NKSP to Marin County for court proceedings, he alleges no facts showing that the transfer placed him at extreme risk of contracting COVID-19. See, e.g., Stephen v. Tilestone, No. 2:20-cv-1841 KJN P, 2021 WL 289379, at *6 (concluding that plaintiff failed to allege Eighth Amendment violation for prison transfer that purportedly put him at extreme risk of contracting COVID-19 because he did not allege facts showing how any particular defendant violated his rights).  Indeed, Plaintiff acknowledges that he was tested twice prior to the transfer and once again after the transfer in which he tested positive and was placed in quarantine for 14 days.  Plaintiff's allegations do not demonstrate deliberate indifference to his safety.  The mere fact that Plaintiff did not wish to be transferred for out of court proceedings is insufficient to give rise to a claim for deliberate indifference.

Lastly, Plaintiff's claim that on August 20, 2022, sergeant Chavez brought an inmate who was symptomatic with COVID to Plaintiff's assigned housing unit, does not give rise to a claim for deliberate indifference.  Indeed, proximity to other inmates is an unavoidable condition of confinement, and it is clear from Plaintiff's allegations that the prisoners were tested for COVID and quarantined if necessary.  Further, Plaintiff fails to demonstrate any harm he suffered as a result of Chavez's actions, as Plaintiff tested positive for COVID prior to August 2022, when the alleged symptomatic inmate was placed in his housing unit.

The Court is sympathetic to Plaintiff's suffering and the challenges that Plaintiff and other prisoners have faced while incarcerated during the COVID-19 pandemic. However, Plaintiff must plead enough factual content to permit the Court to draw a reasonable inference

that Defendants violated the Eighth Amendment. See Iqbal, 556 U.S. at 679. Plaintiff has not done so here. Therefore, the Court must recommend dismissal of Plaintiff's Eighth Amendment claims.

### C. Deliberate Indifference to Serious Medical Need

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (citation omitted).

"A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citation and internal quotation marks omitted). "Indications that a plaintiff has a serious medical need include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

To the extent Plaintiff is attempting to state a claim for deliberate indifference to a serious medical need, Plaintiff fails to allege facts to support that any Defendant was deliberately indifferent to his medical needs once he contracted COVID-19. Despite being provided the relevant pleading standards, Plaintiff has been unable to cure this deficiency.

### D. Violation of Title 15

To the extent that Defendants have not complied with applicable state statutes or prison regulations regarding the COVID-19 protocols, this deprivations does not support a claim under § 1983. Section 1983 only provides a cause of action for the deprivation of federally

protected rights. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." Sweaney v. Ada Cty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996)); see also Davis v. Kissinger, No. CIV S-04-0878-GEB-DAD-P, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb. 3, 2009). Nor is there any liability under § 1983 for violating prison policy. Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997)). Thus, the violation of any state law or regulation that reaches beyond the rights protected by the federal Constitution and/or the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under § 1983. Accordingly, Plaintiff cannot maintain a § 1983 claim for violations of Title 15 or other California law.

### E. Further Leave to Amend

Plaintiff has had two opportunities to state a claim. The defects set forth above are not the result of inartful pleading. Further amendment here would be futile.  Accordingly, the Court recommends that the first amended complaint be dismissed without further leave to amend.  See, e.g., Fid. Fin. Corp. v. Fed. Home Loan Bank of S.F., 792 F.2d 1432, 1438 (9th Cir. 1986) ("The district court's discretion to deny leave to amend s particularly broad where the court has already given the plaintiff an opportunity to amend his complaint."); Ismail v. Cnty. of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012).

## IV.

## ORDER AND RECOMMENDATION

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court is directed to randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that the instant action be dismissed, without further leave to amend, for failure to state a cognizable claim for relief.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **April 14, 2023**

UNITED STATES MAGISTRATE JUDGE